1   SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
    Alan R. Plutzik, Of Counsel (Bar No. 077758)
2   L. Timothy Fisher, Of Counsel (Bar No. 191626)
    2125 Oak Grove Road, Suite 120
3   Walnut Creek, CA 94598
    Telephone: (925) 945-0770
4   Facsimile: (925) 945-8792
5
    *Attorneys for Plaintiffs*
6
7   [Additional Counsel Appear on Signature Page]

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10
11  DONALD CERINI, Individually and On Behalf of     )
    All Others Similarly Situated,                   )
12                                                    )   **CIVIL ACTION NO.**
                                                      )
13                           Plaintiff,               )
                                                      )   C07-06228
14        vs.                                         )
                                                      )   CLASS ACTION COMPLAINT
15                                                    )
    VERIFONE HOLDINGS, INC., DOUGLAS G.               )
16  BERGERON, and BARRY ZWARENSTEIN,                  )
                                                      )   **JURY TRIAL DEMANDED**
17                                                    )
                                                      )
18                           Defendants.              )
                                                      )

19        Plaintiff, Donald Cerini ("Plaintiff"), alleges the following based upon the investigation by

20  Plaintiff's counsel, which included, among other things, a review of the defendants' public

21  documents, conference calls and announcements made by defendants, United States Securities and

22  Exchange Commission ("SEC") filings, wire and press releases published by and regarding VeriFone

23  Holdings, Inc. ("VeriFone" or the "Company"), securities analysts' reports and advisories about the

24  Company, and information readily available on the Internet, and Plaintiff believes that substantial

25  additional evidentiary support will exist for the allegations set forth herein after a reasonable

26  opportunity for discovery.

27

28

## NATURE OF THE ACTION AND OVERVIEW

1.    This is a federal class action on behalf of purchasers of VeriFone's securities between September 1, 2006 and November 30, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    VeriFone is a provider of technology that enables electronic payment transactions and value-added services at the point of sale. The Company's systems consist of point of sale electronic payment devices that run the Company's and third-party operating systems, security and encryption software and certified payment software, as well as third-party applications. Its system solutions process a range of payment types, including signature and personal identification number-based debit cards, credit cards, contactless/radio frequency identification cards, smart cards, electronic bill payment, check authorization and conversion, signature capture and electronic benefits transfer. The Company's customers are primarily global financial institutions, payment processors, petroleum companies, large retailers, government organizations and healthcare companies, as well as independent sales organizations. On November 1, 2006, the Company acquired Lipman Electronic Engineering Ltd. ("Lipman Electronic").

3.    On December 3, 2007, the Company shocked investors when it announced that its financial statements for the three months ended January 31, 2007, the three and six months ended April 30, 2007 and the three and nine months ended July 31, 2007 should no longer be relied upon. This was due to errors in accounting related to the valuation of in-transit inventory and allocation of manufacturing and distribution overhead to inventory. Each of these accounting errors affected VeriFone's reported costs of net revenues. Further, the Company disclosed that its restated financial statements would correct errors that overstated previously reported inventories by "material amounts," and understated the Company's cost of net revenues by "material amounts." A preliminary review revealed that these restatements would result in reductions to the Company's previously reported inventory levels of approximately $7.7 million, $16.5 million and $30.2 million as of January 31, 2007, April 30, 2007 and July 31, 2007, respectively. Additionally, the Company would realize reductions to its previously reported pre tax income of approximately $8.9 million, $7.0 million and $13.8 million for the three month periods ended January 31, 2007, April 30, 2007

1  and July 31, 2007, respectively.

2       4.      Also on December 3, 2007, the *Associated Press* detailed how the Company had

3  "overstated its profit before taxes by almost $30 million, or 80 percent, in the first three quarters of

4  the fiscal year." One analyst detailed how the restatement "calls into question VeriFone's gross

5  margins, which up until now have been positive fuel for the stock." Other analysts stated that the

6  necessary inventory adjustments were likely related to VeriFone's acquisition of Lipman Electronic

7  Engineering, which the Company completed in November 2006.

8       5.      On this news, the Company's shares fell $22.00 per share, or over 45.8 percent, to

9  close on December 3, 2007 at $26.03 per share, on unusually heavy trading volume.

10      6.      The Complaint alleges that, throughout the Class Period, defendants failed to disclose

11  material adverse facts about the Company's financial well-being, business relationships, and

12  prospects. Specifically, defendants failed to disclose or indicate the following: (1) that the

13  Company had materially overstated its inventory due to accounting errors; (2) that the Company had

14  materially understated its cost of net revenues; (3) as such, the Company's gross margins were

15  misstated; (4) that the Company's financial results were not prepared in accordance with Generally

16  Accepted Accounting Principles ("GAAP"); (5) that, as a result of the foregoing, the Company's

17  financial statements were materially false and misleading at all relevant times; (6) that the

18  Company's integration of Lipman Electronic was not proceeding according to plan; (7) that the

19  Company lacked adequate internal and financial controls; and (8) that, as a result of the foregoing,

20  the Company's statements about its financial well-being and future business prospects were lacking

21  in any reasonable basis when made.

22      7.      As a result of defendants' wrongful acts and omissions, and the precipitous decline in

23  the market value of the Company's securities, Plaintiff and other Class Members have suffered

24  significant losses and damages.

25                          **JURISDICTION AND VENUE**

26      8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the

27  Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R.

28  § 240.10b-5).

CLASS ACTION COMPLAINT

1    9.    This Court has jurisdiction over the subject matter of this action pursuant to Section

2  27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

3    10.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act,

4  15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein,

5  including the preparation and dissemination of materially false and misleading information, occurred

6  in substantial part in this Judicial District. Additionally, VeriFone's principal executive offices are

7  located within this Judicial District.

8    11.    In connection with the acts, conduct and other wrongs alleged in this Complaint,

9  defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

10  including but not limited to, the United States mails, interstate telephone communications and the

11  facilities of the national securities exchange.

12                                          **PARTIES**

13    12.    Plaintiff, Donald Cerini, as set forth in the accompanying certification, incorporated

14  by reference herein, purchased VeriFone's securities at artificially inflated prices during the Class

15  Period and has been damaged thereby.

16    13.    Defendant VeriFone is a Delaware corporation with its principal executive offices

17  located at 2099 Gateway Place, Suite 600, San Jose, California.

18    14.    Defendant Douglas G. Bergeron ("Bergeron") was, at all relevant times, the

19  Company's Chief Executive Officer ("CEO") and Chairman of the Board of Directors.

20    15.    Defendant Barry Zwarenstein ("Zwarenstein") was, at all relevant times, the

21  Company's Chief Financial Officer ("CFO"), Secretary, and an Executive Vice President.

22    16.    Defendants Bergeron and Zwarenstein are collectively referred to hereinafter as the

23  "Individual Defendants." The Individual Defendants, because of their positions with the Company,

24  possessed the power and authority to control the contents of VeriFone's reports to the SEC, press

25  releases and presentations to securities analysts, money and portfolio managers and institutional

26  investors, i.e., the market. Each defendant was provided with copies of the Company's reports and

27  press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the

28  ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their

CLASS ACTION COMPLAINT

1 positions and access to material non-public information available to them, each of these defendants
2 knew that the adverse facts specified herein had not been disclosed to, and were being concealed
3 from, the public, and that the positive representations which were being made were then materially
4 false and misleading. The Individual Defendants are liable for the false statements pleaded herein,
5 as those statements were each "group-published" information, the result of the collective actions of
6 the Individual Defendants.

7 ## SUBSTANTIVE ALLEGATIONS

8 ### Background

9       17.     VeriFone is a provider of technology that enables electronic payment transactions and
10 value-added services at the point of sale. The Company's systems consist of point of sale electronic
11 payment devices that run the Company's and third-party operating systems, security and encryption
12 software and certified payment software, as well as third-party applications. Its system solutions
13 process a range of payment types, including signature and personal identification number-based
14 debit cards, credit cards, contactless/radio frequency identification cards, smart cards, electronic bill
15 payment, check authorization and conversion, signature capture and electronic benefits transfer. The
16 Company's customers are primarily global financial institutions, payment processors, petroleum
17 companies, large retailers, government organizations and healthcare companies, as well as
18 independent sales organizations.

19
20 ### Materially False and Misleading
### Statements Issued During the Class Period

21       18.     On August 31, 2006, after the close of the market, the Company issued a press release
22 entitled "VeriFone Reports Third Quarter Fiscal 2006 Results; Record Third Quarter Revenues of
23 $148 Million; EBITDA Margins, as Adjusted, Increased to 22.6% for the Quarter; Third Quarter
24 GAAP Net Income Increased 156%." Therein, the Company, in relevant part, stated:

25             VeriFone Holdings, Inc. (NYSE: PAY), a leading global provider of
26             technology that enables electronic payment transactions, today
             announced financial results for the three months ended July 31, 2006.
27
28             Net revenues for the three months ended July 31, 2006, were $147.6
             million, an increase of 17% over net revenues of $125.7 million for
             the comparable period of fiscal 2005. The increase was driven by a

- 5 -
CLASS ACTION COMPLAINT

19% increase in net revenues from VeriFone's North America business and a 16% increase in net revenues in VeriFone's International business.

Gross margins, under generally accepted accounting principles (GAAP), for the three months ended July 31, 2006, were 45.0%, compared to 40.7% for the three months ended July 31, 2005. Gross margins, excluding non-cash amortization of purchased intangibles and stock-based compensation expense, expanded for the seventh consecutive quarter and reached 45.9% compared to 42.0% for the three months ended July 31, 2005.

Net income for the three months ended July 31, 2006, was $16.8 million, or $0.24 per diluted share, compared to $6.5 million, or $0.10 per diluted share, for the comparable period of fiscal 2005. Net income, as adjusted, which excludes non-cash amortization of purchased intangibles and debt issuance costs, as well as non-cash stock-based compensation expense, for the three months ended July 31, 2006, was $19.7 million, or $0.28 per diluted share, compared to $13.1 million, or $0.20 per diluted share, for the comparable period of fiscal 2005.

EBITDA, as adjusted, which excludes non-cash amortization of purchased intangibles and debt issuance costs, as well as non-cash stock-based compensation expense, expanded for the eighth consecutive quarter and reached a record level of $33.4 million, a 49% increase over the $22.4 million recorded in the three months ended July 31, 2005. As a percent of net revenues, EBITDA, as adjusted, for the three months ended July 31, 2006, reached 22.6%, substantially higher than the 17.8% recorded in the three months ended July 31, 2005.

"We are once again extremely pleased with the consistency of our quarterly results, demonstrated by our tenth consecutive quarter with double digit revenue growth and our eighth consecutive quarter of expanded EBITDA as adjusted margins, which reached a record level of 22.6% in the quarter," said Douglas G. Bergeron, Chairman and Chief Executive Officer. "We are expecting to close the acquisition of Lipman Electronic Engineering Ltd. by November 1, 2006, and remain confident that we will receive clearance by the United States Department of Justice very shortly. We remain on track to deliver another year of outstanding results and we remain confident in our long-term model, which calls for annual revenue growth of 10 to 15% and annual adjusted net income per share growth of 20% or more."

"Based on our confidence with our near term and long term outlook, we are raising our FY06 year end guidance to $1.07 to $1.08 of adjusted net income per share. We are also raising our FY07 guidance to $1.40 to $1.42 of adjusted net income per share, assuming a

CLASS ACTION COMPLAINT

November 1, 2006, completion of the Lipman acquisition," continued Bergeron.

19.     On this news, the Company's shares increased $5.32 per share, or 23 percent, to close on September 1, 2006 at $28.47 per share, on unusually heavy trading volume.

20.     Also on September 1, 2006, VeriFone filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by the Individual Defendants, and reaffirmed the Company's financial results previously announced on August 31, 2006. Additionally, the Company, in relevant part, stated:

### Critical Accounting Policies

The discussion and analysis of our financial condition and results of operations are based upon our consolidated financial statements, which have been prepared in accordance with accounting principles generally accepted in the United States. The preparation of these financial statements requires us to make estimates and judgments that affect the reported amounts of assets, liabilities, revenues and expenses, and related disclosure of assets and liabilities. On an on-going basis, we evaluate our critical accounting policies and estimates, including those related to revenue recognition, bad debts, income taxes and intangible assets. We base our estimates on historical experience and on various other assumptions that we believe to be reasonable under the circumstances, the results of which form the basis for making judgments about the carrying values of assets and liabilities that are not readily apparent from other sources. Actual results may differ from these estimates under different assumptions or conditions. For further information on the critical accounting policies of VeriFone, see the discussion of critical accounting policies in VeriFone's Annual Report on Form 10-K for the fiscal year ended October 31, 2005, that was filed with the SEC on December 20, 2005.

* * *

### CONTROLS AND PROCEDURES

(a)     *Evaluation of disclosure controls and procedures.*

With the participation of our Chief Executive Officer and Chief Financial Officer, management has carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) under the Securities Exchange Act of 1934). Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of the end of the period covered by this report.

- 7 -

(b)    *Changes in internal control over financial reporting.*

During the third quarter of our fiscal year ending October 31, 2006, we implemented the following changes to internal control over financial reporting (as defined in Rule 13a-15(f) under the Securities Exchange Act of 1934):

- enhanced the secondary review for certain sales orders to ensure proper accounting;

- issued additional formal accounting policies and enhanced processes surrounding the recording of certain transactions for the purposes of enhancing internal controls.

These actions represent management's continued emphasis to adopt internal control related to developing business needs and to enhance the internal control environment as management continues to prepare for reporting on our internal control over financial reporting, as required by Section 404 of the Sarbanes-Oxley Act of 2002.

21.    The Company's 10-Q filed on September 1, 2006 also contained Sarbanes-Oxley required certifications, signed by the Individual Defendants, who stated:

I, [Douglas G. Bergeron, Chief Executive Officer / Barry Zwarenstein, Chief Financial Officer] of VeriFone Holdings, Inc. certify that:

1.    I have reviewed this quarterly report on Form 10-Q of VeriFone Holdings, Inc.;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

(a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be

CLASS ACTION COMPLAINT

designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(c) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

22. On November 1, 2006, the Company issued a press release entitled "VeriFone Completes Acquisition of Lipman." Therein, the Company, in relevant part, stated:

- Complementary Geographies Create Technology Leader Across Most Markets

- Increases Operating Model Targets

- New Management Team Announced

VeriFone Holdings, Inc. (NYSE: PAY; TASE: PAY) today announced the completion of its acquisition of Lipman Electronic

- 9 -

Engineering, Ltd. and an enhanced management team to lead the enlarged company. Additionally, VeriFone today is reaffirming operating model targets resulting from the benefits of its increased scale and geographic reach.

"Our acquisition of Lipman combines the two strong financial performers in the industry and, due to the very complementary geographic concentrations of the companies, we have created the undisputed payment technology leader in the world," said VeriFone Chairman and CEO Douglas G. Bergeron.

"VeriFone's new or expanded leadership position in North America and in Asia, Latin America, and many markets in Europe allows us to participate fully in the highest revenue growth areas of the world," Bergeron said. "Our new research and development scale gives us the unique capabilities to meet the increasingly complex security standards for payment transactions and to be first-to-market with the increasingly complex systems and solutions our customers demand.

"VeriFone is committed to continuing and expanding the NURIT product family, offering our customers around the world the flexibility to maintain and enhance their installed base of systems with a lower total cost of ownership," Bergeron said.

## UPDATED FINANCIAL OPERATING MODEL TARGETS

The Company is reaffirming the improved long-term operating model that was announced on April 10, 2006. Specifically:

- Revenue growth is expected to be between 10% and 15%.

- Gross profit margin target, as adjusted for amortization of intangibles and stock-based compensation, is expected to be in the range of 42% to 47%.

- EBITDA margin target, as adjusted for amortization of intangibles, amortization of debt issuance costs and stock-based compensation, is expected to be in the range of 18% to 24%.

- Net profit margin target, as adjusted for amortization of intangibles, debt issuance costs and stock-based compensation, is expected to be in the range of 12% to 17%.

In addition, the Company is also reaffirming the guidance of $1.40 to $1.42 per share in earnings on a net income as adjusted basis for the 2007 fiscal year starting on November 1, 2006, which was provided on the third quarter earnings conference call.

## FULLY INTEGRATED MANAGEMENT TEAM

CLASS ACTION COMPLAINT

1    VeriFone is announcing the following executive appointments:

2    • William Atkinson has been named executive vice president,
3    Payment Systems, responsible for all international business
     activity, the North American financial group, and the company's
4    vertical market systems groups.

5    • Isaac Angel has been named executive vice president of
6    operations.

7    • David Turnbull has been named global head of research and
     development.

8
     • Jesse Adams has been named vice chairman of VeriFone.
9
     • Additionally, Bud Waller continues as executive vice president,
10   Integrated Systems, responsible for the company's Petroleum
     Systems group, Multi-Lane systems group, and software systems
11   group.  Barry Zwarenstein continues to serve as chief financial
     officer and executive vice president.
12

13   23.    On December 7, 2006, the Company issued a press release entitled "VeriFone Reports

14   Fourth Quarter and Fiscal 2006 Results."  Therein, the Company, in relevant part, stated:

15   • Fourth-Quarter Revenues Increased 20% to $157 Million

16   • EBITDA, as Adjusted, Margins Increased to 24.2% for the
     Quarter
17

18   • Fourth Quarter Net Income, as Adjusted, Increased 50% to $22.3
     Million
19
     VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure
20   electronic payment solutions, today announced financial results for
     the three months and fiscal year ended October 31, 2006.
21

22   Net revenues for the three months ended October 31, 2006, were
     $156.6 million, an increase of 20% over net revenues of $130.5
23   million for the comparable period of 2005. The increase was driven
     by a 30% increase in net revenues from VeriFone's International
24   business and a 14% increase in net revenues from VeriFone's North
     America business.
25
     Gross margins, under generally accepted accounting principles
26   (GAAP), for the three months ended October 31, 2006, were 46.0%,
     compared to 42.7% for the three months ended October 31, 2005.
27   Gross margins, excluding non-cash amortization of purchased
     intangibles and stock-based compensation expense, expanded for the
28   eighth consecutive quarter and reached 47.1% for the three months

- 11 -

ended October 31, 2006, compared to 44.0% for the comparable period of 2005.

Net income for the three months ended October 31, 2006, was $13.9 million, or $0.20 per diluted share, compared to $12.1 million, or $0.18 per diluted share, for the comparable period of fiscal 2005. GAAP net income was impacted in the quarter by the $4.1 million after-tax write off of debt issuance costs, attributable to the refinancing of outstanding debt in connection with the Lipman acquisition. Net income, as adjusted, which excludes non-cash amortization of purchased intangibles and debt issuance costs, as well as non-cash stock-based compensation expense, for the three months ended October 31, 2006, was $22.3 million, or $0.32 per diluted share, compared to $14.9 million, or $0.22 per diluted share, for the comparable period of fiscal 2005.

EBITDA, as adjusted, which excludes non-cash amortization of purchased intangibles and debt issuance costs, as well as non-cash stock-based compensation expense, expanded for the ninth consecutive quarter and reached a record level of $38.0 million, a 44% increase over the $26.5 million recorded in the three months ended October 31, 2005. EBITDA, as adjusted, margins for the three months ended October 31, 2006, reached 24.2%, as compared to the 20.3% recorded in the three months ended October 31, 2005.

Net revenues for the fiscal year ended October 31, 2006, were $581.0 million, an increase of 20% over the $485.4 million recorded for fiscal 2005.

Net income for the fiscal year ended October 31, 2006, was $59.5 million, compared to $33.2 million for fiscal 2005. Net income, as adjusted, for the fiscal year ended October 31, 2006, was $76.4 million, compared to $49.7 million, for fiscal 2005.

EBITDA, as adjusted, for the fiscal year ended October 31, 2006, was $130.4 million, an increase of 51% over the $86.4 million recorded for fiscal 2005. EBITDA, as adjusted, margins for the fiscal year ended October 31, 2006, were 22.4%, compared to 17.8% for the comparable period of 2005.

"VeriFone has completed another outstanding quarter and achieved record revenue and earnings for fiscal year 2006. This year was highlighted by our transformative acquisition of Lipman which combined the two strongest financial performers in the industry to create the world leader in payment technology," said Douglas G. Bergeron, Chairman and Chief Executive Officer.

"We enter our new financial year poised to capitalize on our numerous competitive advantages and our very wide range of product offerings," continued Bergeron. "The integration of Lipman into

CLASS ACTION COMPLAINT

1

VeriFone has been completed ahead of schedule and we have created a single-branded, unified company with tremendous scale advantages. Already, we are enjoying several supply chain efficiencies and earnings accretion."

"As a result, we have increased our internal expectations for fiscal Q1 2007 net earnings per share, as adjusted, to be in the range of $0.33 to $0.34. We remain very confident of our prospects in fiscal 2007."

24.    On December 18, 2006, VeriFone filed its Annual Report with the SEC on Form 10-K. The Company's 10-K was signed by the Individual Defendants, among others, and reaffirmed the Company's financial results previously announced on December 7, 2006. The Company's 10-K also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶21, *supra*. Additionally, the Company, in relevant part, stated:

**Critical Accounting Policies**

*General*

Management's Discussion and Analysis of Financial Condition and Results of Operations are based upon our Consolidated Financial Statements, which have been prepared in accordance with U.S. Generally Accepted Accounting Principles. We base our estimates on historical experience and on various other assumptions that are believed to be reasonable under the circumstances, the results of which form the basis for making judgments about the carrying values of assets and liabilities that are not readily apparent from other sources. Actual results may differ from these estimates under different assumptions or conditions.

An accounting policy is deemed to be critical if it requires an accounting estimate to be made based on assumptions about matters that are highly uncertain at the time the estimate is made, and if different estimates that reasonably could have been used, or changes in the accounting estimates that are reasonably likely to occur periodically, could materially impact our consolidated financial statements. We believe the following critical accounting policies include our more significant estimates and assumptions used in the preparation of our consolidated financial statements. Our significant accounting policies are described in Note 2 to our consolidated financial statements included in Item 8 of this Annual Report on Form 10-K.

*Revenue Recognition*

Net revenues from System Solutions are recognized upon shipment, delivery, or customer acceptance of the product as required pursuant

- 13 -

to the customer arrangement. Net revenues from services such as customer support are initially deferred and then recognized on a straight-line basis over the term of the contract. Net revenues from services such as installations, equipment repairs, refurbishment arrangements, training and consulting are recognized as the services are rendered. For arrangements with multiple elements, we allocate net revenues to each element using the residual method based on objective and reliable evidence of the fair value of the undelivered element. We defer the portion of the arrangement fee equal to the objective evidence of fair value of the undelivered elements until they are delivered.

While the majority of our sales transactions contain standard business terms and conditions, there are some transactions that contain non-standard business terms and conditions. As a result, significant contract interpretation is sometimes required to determine the appropriate accounting including: (1) whether an arrangement exists and what is included in the arrangement; (2) how the arrangement consideration should be allocated among the deliverables if there are multiple deliverables; (3) when to recognize net revenues on the deliverables; (4) whether undelivered elements are essential to the functionality of delivered elements; and (5) whether we have fair value for the undelivered element. In addition, our revenue recognition policy requires an assessment as to whether collectibility is probable, which inherently requires us to evaluate the creditworthiness of our customers. Changes in judgments on these assumptions and estimates could materially impact the timing of revenue recognition.

\* \* \*

## CONTROLS AND PROCEDURES

(a)    *Evaluation of disclosure controls and procedures.*

With the participation of our Chief Executive Officer and Chief Financial Officer, management has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, our disclosure controls and procedures are effective.

(b)    *Management's report on internal control over financial reporting.*

Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as such term is defined in Exchange Act Rules 13a-15(f) and 15d-15(f), to provide

- 14 -

reasonable assurance regarding the reliability of our financial reporting and the preparation of financial statements for external purposes in accordance with U.S. generally accepted accounting principles. Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, we conducted an evaluation of the design and operational effectiveness of our internal control over financial reporting as of October 31, 2006 based on the framework in *Internal Control—Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).

25.    On March 1, 2007, the Company issued a press release entitled "VeriFone Reports First Quarter Fiscal 2007 Results." Therein, the Company, in relevant part, stated:

> **Revenues of $217 million Grew 61% due to Lipman Acquisition and Strong International Performance**
>
> **Record EBITDA, as adjusted, margins of 25.7%**
>
> **EPS, as adjusted, increases 54% to 37 cents**
>
> VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended January 31, 2007. The Company's first quarter results reflect the November 1, 2006, acquisition of Lipman and, because of the integration of Lipman's products and distribution channels as well as the lack of comparable quarter ends of VeriFone and Lipman, are compared to pre-acquisition results of prior fiscal periods.
>
> Net revenues, for the three months ended January 31, 2007, were $216.6 million, 61% higher than the net revenues of $134.6 million for the comparable period of 2006. The record revenues were driven by the Lipman acquisition and a strong performance internationally.
>
> Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, were 47.1%, for the three months ended January 31, 2007, compared to 45.6% for the comparable period of 2006. GAAP gross margins for the three months ended January 31, 2007, were 37.6%, compared to 44.3% for the three months ended January 31, 2006, as a result of increased amortization of purchased technology assets and the step-up in inventory.
>
> EBITDA, as adjusted, margins for the three months ended January 31, 2007, expanded for the tenth consecutive quarter and reached a record level of 25.7%, compared to the 21.0% recorded in the three months ended January 31, 2006.

CLASS ACTION COMPLAINT

GAAP EPS for the three months ended January 31, 2007, was a loss of ($0.01) per diluted share, compared to $0.20 per diluted share, for the comparable period of fiscal 2006, due to acquisition related charges and a higher GAAP tax rate. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense, for the three months ended January 31, 2007, increased 54% to $0.37 per diluted share, compared to $0.24 per diluted share, for the three months ended January 31, 2006.

"VeriFone has successfully completed its first quarter since our transformative acquisition of Lipman. I am delighted both with the progress that we have made in integrating Lipman's business into VeriFone and in generating another very strong quarter financially and operationally," said Douglas G. Bergeron, Chairman and Chief Executive Officer.

"VeriFone's newly configured worldwide sales force is serving customers through a fully integrated distribution channel and supply chain. At the same time we have been reducing inventory and generating considerable operating cash flow," continued Bergeron.

"Based on these results, we are increasing our second quarter internal expectations for net income, as adjusted, per share to be in the range of $0.36 to $0.37. We remain very confident of our prospects for fiscal 2007."

26.     On March 9, 2007, VeriFone filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by the Individual Defendants, and reaffirmed the Company's financial results previously announced on March 1, 2007. The Company's 10-Q also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶21, *supra*. Additionally, the Company, in relevant part, stated:

**Critical Accounting Policies**

The discussion and analysis of our financial condition and results of operations are based upon our consolidated financial statements, which have been prepared in accordance with accounting principles generally accepted in the United States. The preparation of these financial statements requires us to make estimates and judgments that affect the reported amounts of assets, liabilities, revenues and expenses, and related disclosure of assets and liabilities. On an on-going basis, we evaluate our critical accounting policies and estimates, including those related to revenue recognition, bad debts, income taxes and intangible assets. We base our estimates on historical experience and on various other assumptions that we believe to be reasonable under the circumstances, the results of which

form the basis for making judgments about the carrying values of assets and liabilities that are not readily apparent from other sources. Actual results may differ from these estimates under different assumptions or conditions. For further information on our critical accounting policies, see the discussion of critical accounting policies in our Annual Report on Form 10-K for the fiscal year ended October 31, 2006, which was filed with the SEC on December 18, 2006.

* * *

## CONTROLS AND PROCEDURES

(a)    *Evaluation of disclosure controls and procedures.*

With the participation of our Chief Executive Officer and Chief Financial Officer, management has carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) and 15d-15(f) under the Securities Exchange Act of 1934). Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of the end of the period covered by this report.

(b)    *Changes in internal control over financial reporting.*

During the first quarter of our fiscal year ending October 31, 2007, as a result of our acquisition of Lipman, we implemented the following changes to internal control over financial reporting (as defined in Rule 13a-15(f) under the Securities Exchange Act of 1934):

- Ensured the adoption of VeriFone's accounting policies and processes for Lipman's transactions

- Enhanced the review for certain sales orders to ensure proper accounting.

There have been no other changes in our internal control over financial reporting that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting for the quarter ended January 31, 2007.

27.    On May 29, 2007, the Company issued a press release entitled "VeriFone Reports Second Quarter Fiscal 2007 Results." Therein, the Company, in relevant part, stated:

**Revenues of $217 Million Grew 53% Due to Lipman Acquisition and Resurgent North American Growth**

**Record EBITDA, as Adjusted, Margins of 26.3%**

- 17 -

1

**EPS, as Adjusted, Increases 50% to 39 Cents**

2

3

VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended April 30, 2007.

4

5

Net revenues, for the three months ended April 30, 2007, were $217.2 million, 53% higher than the net revenues of $142.2 million for the comparable period of 2006. VeriFone's International business increased 97% and VeriFone's North America business increased 19%. The significant increase in sales was driven largely by the acquisition of Lipman, which closed November 1, 2006.

6

7

8

9

Subsequent to the end of the quarter, management determined that booked orders of approximately $4 million could not be recognized as revenue due to incomplete sales administration requirements in our international operations. These orders were largely sourced from VeriFone's new Israeli and Turkish facilities and all were headed to high growth markets in Asia, Eastern Europe and Africa. The Company is confident that the shortcomings in applying these field processes have now been remedied. All of this revenue has now been fully recognized and is reflected in guidance for the third quarter.

10

11

12

13

14

Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, expanded to a record 48.1%, for the three months ended April 30, 2007, compared to 45.7% for the comparable period of 2006. GAAP gross margins for the three months ended April 30, 2007, were 41.5%, compared to 44.6% for the three months ended April 30, 2006, as a result of increased amortization of purchased technology assets, the step-up in inventory and stock-based compensation.

15

16

17

18

19

GAAP operating expenses for the three months ended April 30, 2007, were $72.9 million compared to $37.8 million for the comparable period of 2006. In addition to the effect of the Lipman acquisition and related integration expenses, the Company incurred higher non-cash stock compensation expenses and amortization of purchased intangible assets. Stock based compensation for the three months ended April 30, 2007 was $9.8 million compared to $1.0 million for the comparable period of 2006. This increase was primarily due to the acceleration of the vesting of options of Lipman executives, the increase in the number of option holders following the Lipman acquisition and the grant of performance-based restricted stock units to the Company's Chief Executive Officer. Amortization of purchased intangible assets for the three months ended April 30, 2007 was $6.1 million compared to $1.2 million for the comparable period of 2006, primarily due to the Lipman acquisition.

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

EBITDA, as adjusted, margins for the three months ended April 30, 2007, expanded for the eleventh consecutive quarter and reached a record level of 26.3%, compared to the 21.6% recorded in the three months ended April 30, 2006.

GAAP EPS for the three months ended April 30, 2007, was $0.06 per diluted share, compared to $0.22 per diluted share, for the comparable period of fiscal 2006, due to acquisition related non-cash charges, higher stock-based compensation expense primarily related to the Lipman acquisition and to a significantly higher GAAP tax rate driven by an increase in the valuation allowance related to Lipman. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense and Lipman integration costs, for the three months ended April 30, 2007, increased 50% to $0.39 per diluted share, compared to $0.26 per diluted share, for the three months ended April 30, 2006.

"I am pleased to report on another very successful quarter for VeriFone as we once again achieved record profitability," said Douglas G. Bergeron, Chairman and Chief Executive Officer. "During the quarter, our record margins drove our robust EPS growth, and also resulted in strong cash flow," continued Bergeron. "We were especially pleased with our continuing success of our wireless products and were delighted with the resurgence of our North American business which grew sequentially 8 percent from the previous quarter."

"Based on these results and the $4 million of revenue which has been recognized in the third quarter, we are increasing our third quarter internal expectations for net revenue to $225 - $227 million and increasing our guidance for net income, as adjusted, per share to a range of $0.39 - $0.40. We remain confident of our prospects for the remainder of fiscal 2007."

28.     On May 31, 2007, VeriFone filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by the Individual Defendants, and reaffirmed the Company's financial results previously announced on May 29, 2007. The Company's 10-Q also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶21, *supra*. Additionally, the Company, in relevant part, stated:

**Critical Accounting Policies**

The discussion and analysis of our financial condition and results of operations are based upon our consolidated financial statements, which have been prepared in accordance with accounting principles generally accepted in the United States. The preparation of these

financial statements requires us to make estimates and judgments that affect the reported amounts of assets, liabilities, revenues and expenses, and related disclosure of assets and liabilities. On an on-going basis, we evaluate our critical accounting policies and estimates, including those related to revenue recognition, bad debts, income taxes and intangible assets. We base our estimates on historical experience and on various other assumptions that we believe to be reasonable under the circumstances, the results of which form the basis for making judgments about the carrying values of assets and liabilities that are not readily apparent from other sources. Actual results may differ from these estimates under different assumptions or conditions. For further information on our critical accounting policies, see the discussion of critical accounting policies in our Annual Report on Form 10-K for the fiscal year ended October 31, 2006, which was filed with the SEC on December 18, 2006.

\* \* \*

**CONTROLS AND PROCEDURES**

(a)    *Evaluation of disclosure controls and procedures.*

With the participation of our Chief Executive Officer and Chief Financial Officer, management has carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) and 15d-15(f) under the Securities Exchange Act of 1934). Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of the end of the period covered by this report.

(b)    *Changes in internal control over financial reporting.*

No change in our internal control over financial reporting (as defined in Rule 13a-15(f) under the Securities and Exchange Act of 1934) occurred during the second quarter of our fiscal year

29.    On September 6, 2007, the Company issued a press release entitled "VeriFone Reports Third Quarter Fiscal 2007 Results." Therein, the Company, in relevant part, stated:

**Record Revenues of $232 million**

**Record EBITDA, as adjusted, margins of 27.3%**

**Record EPS, as adjusted, of 42 cents, grew 50%**

**Record Operating Cash Flow of $43 million**

CLASS ACTION COMPLAINT

VeriFone Holdings, Inc. (NYSE: PAY), the global leader in secure electronic payment solutions, today announced financial results for the three months ended July 31, 2007.

Net revenues, for the three months ended July 31, 2007, were $231.9 million, 57% higher than the net revenues of $147.6 million for the comparable period of 2006. Net revenues from VeriFone's International business increased 106% while net revenues from VeriFone's North America business increased 22%. The significant increase in net revenues was driven largely by the acquisition of Lipman Electronic Engineering Ltd., which closed November 1, 2006.

Gross margins, excluding non-cash acquisition related charges and stock-based compensation expense, expanded to a record 48.2%, for the three months ended July 31, 2007, compared to 45.9% for the comparable period of 2006. GAAP gross margins for the three months ended July 31, 2007, declined to 44.0% from 45.0% for the three months ended July 31, 2006, primarily as a result of increased amortization of purchased technology assets.

GAAP operating expenses for the three months ended July 31, 2007 were $65.5 million compared to $38.0 million for the comparable period of 2006. This increase was primarily due to the Lipman acquisition and related integration expenses.

EBITDA, as adjusted, margins for the three months ended July 31, 2007, expanded for the twelfth consecutive quarter and reached a record level of 27.3%, compared to the 22.6% recorded in the three months ended July 31, 2006.

GAAP EPS for the three months ended July 31, 2007, was $0.16 per diluted share, compared to $0.24 per diluted share, for the comparable period of fiscal 2006. This decline resulted from acquisition related non-cash charges, higher stock-based compensation expense and a higher GAAP tax rate driven by an increase in the valuation allowance related to the Lipman acquisition. Net income, as adjusted, which excludes non-cash acquisition related charges and debt issuance costs, as well as non-cash stock-based compensation expense and Lipman integration costs, for the three months ended July 31, 2007, increased 50% to $0.42 per diluted share, compared to $0.28 per diluted share, for the comparable period in 2006.

"I am extremely pleased to report on another outstanding quarter as we once again achieved exceptional financial results," said Douglas G. Bergeron, Chairman and Chief Executive Officer. "During the quarter, we achieved record revenues and record gross and operating margins, all which led to strong EPS growth," continued Bergeron.

CLASS ACTION COMPLAINT

"Our North American business continued to surge, growing 9% sequentially. Our compelling portfolio of wireless solutions and our strength in emerging markets were also significant factors driving our success this quarter."

"We are increasing our internal expectations for the fourth quarter and now expect to repeat these record third quarter results. Our guidance for the fourth quarter, therefore, is for net revenue of $231 - $233 million and net income, as adjusted, per share of $0.41 - $0.42. As a result, we are also increasing our full year fiscal year 2007 expectations for net income, as adjusted per share to $1.59 to $1.60 per share. As well, given the out-performance in profitability that we have consistently enjoyed since the closing of the Lipman acquisition last November, we are now taking this opportunity to update our long term financial model. We are reaffirming our revenue growth rate projection in the 10% - 15% range and we are increasing our margin expectations as reflected in the table below."

Long Term Model

|  | Prior | New |
|---|---|---|
| Gross Margin | 42% - 47% | 45% - 50% |
| EBITDA Margin | 18% - 24% | 25% - 30% |
| Net Margin | 12% - 17% | 15% - 20% |

[Internal footnotes omitted.]

30.     On September 7, 2007, VeriFone filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by the Individual Defendants, and reaffirmed the Company's financial results previously announced on September 6, 2007. The Company's 10-Q also contained Sarbanes-Oxley required certifications, substantially similar to the certifications contained in ¶21, *supra*. Additionally, the Company, in relevant part, stated:

**Critical Accounting Policies**

The discussion and analysis of our financial condition and results of operations are based upon our consolidated financial statements, which have been prepared in accordance with accounting principles generally accepted in the United States. The preparation of these financial statements requires us to make estimates and judgments that affect the reported amounts of assets, liabilities, revenues, and expenses, and related disclosure of assets and liabilities. On an on-going basis, we evaluate our critical accounting policies and estimates, including those related to revenue recognition, bad debts,

income taxes, and intangible assets. We base our estimates on historical experience and on various other assumptions that we believe to be reasonable under the circumstances, the results of which form the basis for making judgments about the carrying values of assets and liabilities that are not readily apparent from other sources. Actual results may differ from these estimates under different assumptions or conditions. For further information on our critical accounting policies, see the discussion of critical accounting policies in our Annual Report on Form 10-K for the fiscal year ended October 31, 2006, which was filed with the SEC on December 18, 2006.

* * *

**CONTROLS AND PROCEDURES**

(a)     *Evaluation of disclosure controls and procedures.*

With the participation of our Chief Executive Officer and Chief Financial Officer, management has carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rule 13a-15(e) and 15d-15(f) under the Securities Exchange Act of 1934). Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of the end of the period covered by this report.

(b)     *Changes in internal control over financial reporting.*

No change in our internal control over financial reporting (as defined in Rule 13a-15(f) under the Securities and Exchange Act of 1934) occurred during the third quarter of our fiscal year ended July 31, 2007 that has materially affected, or is reasonably likely to affect, our internal control over financial reporting.

31.     The statements contained in ¶¶ 18 and 20 – 30 were materially false and misleading when made because defendants failed to disclose or indicate the following:  (1) that the Company had materially overstated its inventory due to accounting errors; (2) that the Company had materially understated its cost of net revenues; (3) as such, the Company's gross margins were misstated; (4) that the Company's financial results were not prepared in accordance with GAAP; (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times; (6) that the Company's integration of Lipman Electronic was not proceeding according to plan; (7) that the Company lacked adequate internal and financial controls; and (8) that,

CLASS ACTION COMPLAINT

1  as a result of the foregoing, the Company's statements about its financial well-being and future

2  business prospects were lacking in any reasonable basis when made.

3  **The Truth Begins to Emerge**

4      32.    On December 3, 2007, the Company shocked investors when it issued a press release

5  entitled "VeriFone Announces Anticipated Restatement of 2007 Quarterly Financial Statements."

6  Therein, the Company, in relevant part, disclosed:

7
8  **Also Announces Preliminary Fourth Quarter 2007 Revenue Results and Delays Announcement of Fourth Quarter 2007 Financial Results**

9
10  VeriFone Holdings, Inc. (NYSE: PAY) today announced that following a review by and on the recommendation of management, it

11  has concluded that *its unaudited interim consolidated financial statements for the three months ended January 31, 2007, the three*

12  *and six months ended April 30, 2007 and the three and nine months ended July 31, 2007 should no longer be relied upon, principally*

13  *due to errors in accounting related to the valuation of in-transit inventory and allocation of manufacturing and distribution*

14  *overhead to inventory, each of which affects VeriFone's reported costs of net revenues. The restatements are anticipated to correct*

15  *errors that overstated previously reported inventories in material amounts* as of January 31, 2007, April 30, 2007 and July 31, 2007,

16  *and understated cost of net revenues in material amounts* for the three month periods ended January 31, 2007, April 30, 2007, and July

17  31, 2007. Accordingly, *investors are cautioned not to rely on VeriFone's historical financial statements and earnings press*

18  *releases and similar communications* for the periods ended January 31, 2007, April 30, 2007, and July 31, 2007.

19

20  Based on its review to date, management currently anticipates that the *restatement will result in reductions to previously reported*

21  *inventories of approximately $7.7 million, $16.5 million and $30.2 million as of January 31, 2007, April 30, 2007 and July 31, 2007,*

22  *respectively, and reductions to previously reported pre tax income of approximately $8.9 million, $7.0 million and $13.8 million for the*

23  *three month periods ended January 31, 2007, April 30, 2007 and July 31, 2007, respectively.* VeriFone is currently evaluating the

24  anticipated effect of the restatement on after-tax income for those periods.

25

26  *These estimates include corrections of other unrelated errors detected in the course of VeriFone's review to date*, are based on

27  currently available information and are subject to change during the course of the company's restatement process. While VeriFone is not

28  currently aware of other accounting errors requiring adjustment to

- 24 -

any prior period financial statements, there can be no assurances that VeriFone or its independent registered public accounting firm will not find additional accounting errors requiring further adjustments in those or earlier periods.

VeriFone today also announced that it expects to report total revenues for the three and twelve months ended October 31, 2007, of approximately $238 million and $904 million, respectively. VeriFone's management and the Audit Committee of its Board of Directors have determined to delay the release of full fourth quarter 2007 financial results that were scheduled to be released on December 6, 2007, pending completion of the assessment of these errors and the restatements.

"I am very disappointed to have to bring you this news and am committed to ensuring that we promptly and thoroughly remedy this situation and move forward with the business of delivering value to our shareholders. I am committed to regaining your confidence in VeriFone," said Douglas G. Bergeron, Chairman and Chief Executive Officer.

VeriFone concluded that a restatement of its interim unaudited financial statements is required as a result of an internal review of in-transit inventory balances conducted in preparation for VeriFone's fiscal 2007 audit. In reaching the conclusion to restate its financial results, VeriFone's management and the Audit Committee discussed the matters described in this press release with VeriFone's independent registered public accounting firm.

Upon completion of its assessment of these errors, VeriFone intends to file amended Quarterly Reports on Form 10-Q for the periods described above that will restate the previously issued financial statements included therein. VeriFone currently estimates that it will file these amended quarterly reports, together with its Annual Report on Form 10 K for the fiscal year ended October 31, 2007, in January 2008. However, VeriFone cannot be certain how much time will ultimately be required for it to complete the restatement process. [Emphasis added.]

33.    On this news, the Company's shares fell $22.00 per share, or over 45.8 percent, to close on December 3, 2007 at $26.03 per share, on unusually heavy trading volume.

34.    Also on December 3, 2007, the *Associated Press* reported:

**VeriFone Shares Nose-Dive; Analysts Say Overstatement Likely Related to Lipman Acquisition**

Shares of VeriFone Holdings Inc. *nose-dived nearly 50 percent Monday after the payment processing equipment maker said it*

*overstated its profit before taxes by almost $30 million, or 80 percent, in the first three quarters of the fiscal year*.

Shares plunged $22.11, or 46 percent, to $25.91 in afternoon trading after hitting a new 52-week low of $23.67 earlier in the session. Shares have traded between $31.45 and $50 in the past 12 months.

VeriFone, which will restate results from the first nine months of the year, *blamed accounting errors, saying it did not properly value the products in its inventory, which means the costs the company recorded were too low*. The San Jose, Calif.-based company also said it will delay filing its fourth-quarter results pending a complete assessment of the accounting errors.

*"The restatement calls into question VeriFone's gross margins, which up until now have been positive fuel for the stock*," Tien-tsin Huang, an analyst at JPMorgan Securities, wrote in a note to investors.

Wachovia Securities analyst Daniel R. Perlin said *the inventory adjustments are likely related to VeriFone's acquisition of Lipman Electronic Engineering Ltd., an Israeli provider of electronic payment systems, which was completed in November 2006*.

Gil Luria, an analyst at Wedbush Morgan Securities Inc., *agreed the restatement probably stems from the acquisition. Luria said investor reaction to the announcement is warranted*, but what investors are perhaps even more worried about is the potential for more bad news.

*In a statement, VeriFone said there may be additional accounting errors requiring further adjustments.*

* * *

The news came as a surprise to investors, as there were no warning signs of possible trouble.

"Whatever they did, whatever mistakes they made were beneath the surface," Luria said. [Emphasis added.]

### VERIFONE'S VIOLATION OF GAAP RULES IN ITS FINANCIAL STATEMENTS FILED WITH THE SEC

35.    These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for, and disclosure about its revenues, in violation of GAAP rules.

36.    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

37.    The fact that VeriFone will restate its financial statements, and disclosed that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No.20, ¶¶7-13; SFAS No. 154, ¶25).

38.    Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a)    The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, ¶10);

(b)    The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, ¶34);

(c)    The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, ¶40);

(d)    The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, ¶42);

(e)    The principle that "financial reporting should provide information about how

CLASS ACTION COMPLAINT

1    management of an enterprise has discharged its stewardship responsibility to

2    owners (stockholders) for the use of enterprise resources entrusted to it" was

3    violated (FASB Statement of Concepts No. 1, ¶50);

4    (f)    The principle that "financial reporting should be reliable in that it represents

5    what it purports to represent" was violated (FASB Statement of Concepts No.

6    2, ¶¶ 58-59);

7    (g)    The principle that "completeness, meaning that nothing is left out of the

8    information that may be necessary to insure that it validly represents

9    underlying events and conditions" was violated (FASB Statement of

10    Concepts No. 2, ¶79); and

11    (h)    The principle that "conservatism be used as a prudent reaction to uncertainty

12    to try to ensure that uncertainties and risks inherent in business situations are

13    adequately considered" was violated (FASB Statement of Concepts No. 2,

14    ¶95).

15    39.    The adverse information concealed by Defendants during the Class Period and

16 detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17

17 C.F.R. §229.303).

18    **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

19    40.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

20 Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased VeriFone's

21 securities between September 1, 2006 and November 30, 2007, inclusive (the "Class Period") and

22 who were damaged thereby. Excluded from the Class are defendants, the officers and directors of

23 the Company, at all relevant times, members of their immediate families and their legal

24 representatives, heirs, successors or assigns and any entity in which defendants have or had a

25 controlling interest.

26    41.    The members of the Class are so numerous that joinder of all members is

27 impracticable. Throughout the Class Period, VeriFone's securities were actively traded on the New

28 York Stock Exchange ("NYSE"). While the exact number of Class members is unknown to Plaintiff

1  at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there

2  are hundreds or thousands of members in the proposed Class. Record owners and other members of

3  the Class may be identified from records maintained by VeriFone or, its transfer agent and may be

4  notified of the pendency of this action by mail, using the form of notice similar to that customarily

5  used in securities class actions.

6      42.    Plaintiff's claims are typical of the claims of the members of the Class as all members

7  of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is

8  complained of herein.

9      43.    Plaintiff will fairly and adequately protect the interests of the members of the Class

10  and has retained counsel competent and experienced in class and securities litigation.

11      44.    Common questions of law and fact exist as to all members of the Class and

12  predominate over any questions solely affecting individual members of the Class. Among the

13  questions of law and fact common to the Class are:

14          (a)    whether the federal securities laws were violated by defendants' acts as

15                 alleged herein;

16          (b)    whether statements made by defendants to the investing public during the

17                 Class Period misrepresented material facts about the business, operations and

18                 management of VeriFone; and

19          (c)    to what extent the members of the Class have sustained damages and the

20                 proper measure of damages.

21      45.    A class action is superior to all other available methods for the fair and efficient

22  adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

23  damages suffered by individual Class members may be relatively small, the expense and burden of

24  individual litigation make it impossible for members of the Class to individually redress the wrongs

25  done to them. There will be no difficulty in the management of this action as a class action.

26                          **UNDISCLOSED ADVERSE FACTS**

27      46.    The market for VeriFone's securities was open, well-developed and efficient at all

28  relevant times. As a result of these materially false and misleading statements, and failures to

1  disclose, VeriFone's securities traded at artificially inflated prices during the Class Period. Plaintiff

2  and other members of the Class purchased or otherwise acquired VeriFone's securities relying upon

3  the integrity of the market price of VeriFone's securities and market information relating to

4  VeriFone, and have been damaged thereby.

5       47.    During the Class Period, defendants materially misled the investing public, thereby

6  inflating the price of VeriFone's securities, by publicly issuing false and misleading statements and

7  omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not

8  false and misleading. Said statements and omissions were materially false and misleading in that

9  they failed to disclose material adverse information and misrepresented the truth about the Company,

10 its business and operations, as alleged herein.

11      48.    At all relevant times, the material misrepresentations and omissions particularized in

12 this Complaint directly or proximately caused or were a substantial contributing cause of the

13 damages sustained by Plaintiff and other members of the Class. As described herein, during the

14 Class Period, defendants made or caused to be made a series of materially false or misleading

15 statements about VeriFone's financial well-being, business relationships, and prospects. These

16 material misstatements and omissions had the cause and effect of creating in the market an

17 unrealistically positive assessment of VeriFone and its financial well-being, business relationships,

18 and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all

19 relevant times. Defendants' materially false and misleading statements during the Class Period

20 resulted in Plaintiff and other members of the Class purchasing the Company's securities at

21 artificially inflated prices, thus causing the damages complained of herein.

22                                    **LOSS CAUSATION**

23      49.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the

24 economic loss suffered by Plaintiff and the Class.

25      50.    During the Class Period, Plaintiff and the Class purchased VeriFone's securities at

26 artificially inflated prices and were damaged thereby. The price of VeriFone's securities

27 significantly declined when the misrepresentations made to the market, and/or the information

28 alleged herein to have been concealed from the market, and/or the effects thereof, were revealed,

1 | causing investors' losses.

2 | **SCIENTER ALLEGATIONS**

3 | 51.    As alleged herein, defendants acted with scienter in that defendants knew that the

4 | public documents and statements issued or disseminated in the name of the Company were

5 | materially false and misleading; knew that such statements or documents would be issued or

6 | disseminated to the investing public; and knowingly and substantially participated or acquiesced in

7 | the issuance or dissemination of such statements or documents as primary violations of the federal

8 | securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of

9 | information reflecting the true facts regarding VeriFone, their control over, and/or receipt and/or

10 | modification of VeriFone's allegedly materially misleading misstatements and/or their associations

11 | with the Company which made them privy to confidential proprietary information concerning

12 | VeriFone, participated in the fraudulent scheme alleged herein.

13 | 52.    Throughout the Class Period, the defendants took advantage of the artificially inflated

14 | price of the Company's securities to completing financing activities and an acquisition.  For example,

15 | in November 2006, the Company completed its acquisition of Lipman Electronic by offering that

16 | company's shareholders consideration of $12.80 in cash, or 0.50 shares of the Company's stock, in

17 | exchange for each share of their Lipman Electronic stock.  Then on June 22, 2007, the Company

18 | announced that it had successfully completed a $316.25 million offering of senior convertible notes.

19 | The offering terms dictated that these notes could be converted into shares of the Company's

20 | common stock under certain conditions.

21 | 53.    Additionally, during the Class Period, and with the Company's securities trading at

22 | artificially inflated prices, Company insiders sold 22,513,752 shares of the Company's stock for

23 | gross proceeds of $833,069,417.  This trading by Company insiders is evidenced by the following

24 | chart:

| Date of Trade | Inside Trader | Number of Shares | Price per Share | Gross Proceeds |
|---|---|---|---|---|
| October 26, 2007 | Waller, Elmore | 3,200 | $46.25 - $46.96 | $149,000 |
| October 26, 2007 | Waller, Elmore | 6,800 | $46.97 - $47.24 | $320,000 |

CLASS ACTION COMPLAINT

| October 10, 2007 | Bergeron, Douglas | 17,300 | $46.04 - $46.06 | $796,665 |
| October 10, 2007 | Bergeron, Douglas | 69,700 | $45.73 - $46.03 | $3,198,000 |
| October 10, 2007 | Bergeron, Douglas | 69,800 | $45.50 - $45.72 | $3,184,000 |
| October 10, 2007 | Bergeron, Douglas | 43,200 | $45.13 - $45.49 | $1,957,000 |
| October 9, 2007 | Zwarenstein, Barry | 3,700 | $45.01 - $45.73 | $168,000 |
| October 9, 2007 | Zwarenstein, Barry | 100 | $45.01 | $4,501 |
| October 9, 2007 | Zwarenstein, Barry | 4,700 | $44.72 - $45 | $211,000 |
| October 9, 2007 | Zwarenstein, Barry | 5,100 | $44.08 - $44.71 | $226,000 |
| October 9, 2007 | Zwarenstein, Barry | 4,400 | $43.45 - $45.51 | $196,000 |
| October 9, 2007 | Angel, Isaac | 15,000 | $43.97 - $44.13 | $661,000 |
| September 26, 2007 | Atkinson, William G. | 14,400 | $42.65 - $42.97 | $616,000 |
| September 26, 2007 | Atkinson, William G. | 12,000 | $42.98 - $43.33 | $5,180,002 |
| September 26, 2007 | Atkinson, William G. | 8,600 | $43.35 - $43.73 | $374,000 |
| September 25, 2007 | Waller, Elmore | 10,000 | $40.00 | $400,000 |
| September 24, 2007 | Adams, Jesse | 222 | $38.64 | $8,578 |
| September 24, 2007 | Zwarenstein, Barry | 222 | $38.64 | $8,578 |
| September 24, 2007 | Bergeron, Douglas | 893 | $38.64 | $34,505 |
| September 14, 2007 | Castle, James C. | 4,500 | $39.20 - $39.22 | $176,000 |
| September 13, 2007 | Roche, Collin E.; Bondy, Craig A. | 3,300,000 | $38.61 | $127,413,000 |
| September 13, 2007 | GTCR Invest LP ([1]) | 27,926 | $38.61 | $1,078,222 |

[1] According to SEC filings, GTCR Golder Rauner, L.L.C. is the general partner of the general partner of GTCR Fund VII, L.P., the general partner of the general partner of the general partner of GTCR Capital Partners, L.P., and the general partner of GTCR Co-Invest, L.P. GTCR Golder Rauner, L.L.C., through a six-person members committee, has voting and dispositive authority over the VeriFone shares held by GTCR Fund VII, L.P., GTCR Capital Partners, L.P. and GTCR Co-Invest, L.P. Collin E. Roche, a member of VeriFone's Board of Directors, and of the Board's Compensation Committee, is a principal of GTCR Golder Rauner, L.L.C., and is a member of this authoritative committee.

CLASS ACTION COMPLAINT

| | | | | |
|---|---|---|---|---|
| September 13, 2007 | GTCR Capital Partners LP (1) | 221,728 | $38.61 | $8,560,918 |
| September 13, 2007 | GTCR Fund VII LP (1) | 3,050,346 | $38.61 | $117,773,859 |
| September 12, 2007 | Zwarenstein, Barry | 3,574 | $39.85 | $142,423 |
| September 11, 2007 | Angel, Isaac | 15,000 | $39.62 - $39.77 | $595,000 |
| September 11, 2007 | Zwarenstein, Barry | 9,000 | $39.81 - $39.99 | $359,000 |
| September 11, 2007 | Zwarenstein, Barry | 9,000 | $39 - $39.81 | $355,000 |
| September 10, 2007 | Bergeron, Douglas | 31,200 | $39.18 - $39.39 | $1,226,000 |
| September 10, 2007 | Bergeron, Douglas | 82,500 | $19.14 - $39.17 | $3,231,525 |
| September 10, 2007 | Bergeron, Douglas | 86,300 | $38.73 - $38.92 | $3,351,000 |
| August 14, 2007 | Angel, Isaac | 15,000 | $36.68 - $36.84 | $551,000 |
| August 14, 2007 | Zwarenstein, Barry | 9,700 | $36.79 - $37.52 | $360,000 |
| August 14, 2007 | Zwarenstein, Barry | 8,300 | $36.35 - $36.78 | $303,000 |
| August 10, 2007 | Waller, Elmore | 8,600 | $38.87 - $39.12 | $335,000 |
| August 10, 2007 | Waller, Elmore | 11,400 | $38.52 - $38.87 | $441,000 |
| August 10, 2007 | Adams, Jesse | 11,000 | $38.84 - $39.10 | $429,000 |
| August 10, 2007 | Adams, Jesse | 9,000 | $38.52 - $38.83 | $348,000 |
| August 10, 2007 | Bergeron, Douglas | 83,700 | $39.05 - $39.15 | $3,273,000 |
| August 1, 2007 | Adams, Jesse | 18,525 | $36.05 - $36.58 | $673,000 |
| August 1, 2007 | Adams, Jesse | 100 | $36.48 | $3,647 |
| August 1, 2007 | Adams, Jesse | 17,514 | $35.62 - $36.04 | $628,000 |
| August 1, 2007 | Adams, Jesse | 24,964 | $35.05 - $35.61 | $882,000 |
| July 12, 2007 | Bergeron, Douglas | 37,300 | $36.86 - $37.00 | $1,377,000 |
| July 12, 2007 | Bergeron, Douglas | 47,950 | $36.61 - $36.86 | $1,761,000 |
| July 12, 2007 | Bergeron, Douglas | 71,450 | $36.49 - $36.60 | $2,611,000 |
| July 12, 2007 | Bergeron, Douglas | 43,300 | $36.31 - $36.48 | $1,576,000 |
| July 10, 2007 | Atkinson, William G. | 4,900 | $36.38 - $36.75 | $179,000 |

CLASS ACTION COMPLAINT

| | | | | |
|---|---|---|---|---|
| July 10, 2007 | Atkinson, William G. | 5,100 | $36.07 - $36.37 | $185,000 |
| July 10, 2007 | Zwarenstein, Barry | 9,800 | $36.37 - $36.76 | $358,000 |
| July 10, 2007 | Zwarenstein, Barry | 8,200 | $36.07 - $36.36 | $297,000 |
| July 10, 2007 | Angel, Isaac | 15,000 | $36.38 - $36.46 | $546,000 |
| July 9, 2007 | Waller, Elmore | 10,500 | $36.49 - $36.94 | $386,000 |
| July 9, 2007 | Waller, Elmore | 9,500 | $36.35 - $36.49 | $346,000 |
| July 2, 2007 | Atkinson, William G. | 5,645 | $35.11 - $35.43 | $199,000 |
| July 2, 2007 | Atkinson, William G. | 2,355 | $35.44 - $35.48 | $84,000 |
| July 2, 2007 | Adams, Jesse | 1,250 | $35.29 | $44,112 |
| June 25, 2007 | Roche, Collin E.; Bondy, Craig A. | 3,500,000 | $35.37 | $123,794,999 |
| June 25, 2007 | GTCR Invest LP (1) | 29,619 | $35.37 | $1,047,624 |
| June 25, 2007 | GTCR Capital Partners LP (1) | 235,165 | $35.37 | $8,317,786 |
| June 25, 2007 | GTCR Fund VII LP (1) | 3,235,216 | $35.37 | $114,429,589 |
| June 22, 2007 | Atkinson, William G. | 224 | $36.36 | $8,144 |
| June 22, 2007 | Adams, Jesse | 224 | $36.36 | $8,144 |
| June 22, 2007 | Zwarenstein, Barry | 224 | $36.36 | $8,144 |
| June 22, 2007 | Bergeron, Douglas | 894 | $36.36 | $32,505 |
| June 13, 2007 | Angel, Isaac | 15,000 | $34.36 | $515,400 |
| June 13, 2007 | Waller, Elmore | 20,000 | $35.00 | $700,000 |
| June 12, 2007 | Bergeron, Douglas | 46,100 | $32.87 - $33.10 | $1,521,000 |
| June 12, 2007 | Bergeron, Douglas | 63,800 | $32.65 - $32.86 | $2,090,000 |
| June 12, 2007 | Bergeron, Douglas | 40,100 | $32.43 - $32.64 | $1,305,000 |
| June 12, 2007 | Zwarenstein, Barry | 11,700 | $32.50 - $32.88 | $382,000 |
| June 12, 2007 | Zwarenstein, Barry | 6,300 | $32.88 - $33.00 | $208,000 |
| June 11, 2007 | Atkinson, William G. | 10,000 | $32.44 - $33.00 | $327,000 |

CLASS ACTION COMPLAINT

| June 1, 2007 | Adams, Jesse | 6,209 | $34.41 - $34.62 | $214,000 |
| June 1, 2007 | Adams, Jesse | 5,145 | $34.62 - $34.93 | $179,000 |
| June 1, 2007 | Atkinson, William G. | 4,375 | $34.41 - $34.62 | $151,000 |
| June 1, 2007 | Atkinson, William G. | 3,625 | $34.62 - $34.93 | $126,000 |
| May 14, 2007 | Bergeron, Douglas | 88,100 | $37.78 - $37.99 | $3,338,000 |
| May 10, 2007 | Atkinson, William G. | 10,000 | $37.51 - $38.3 | $379,000 |
| May 10, 2007 | Bergeron, Douglas | 21,671 | $38.07 - $38.34 | $828,000 |
| May 10, 2007 | Bergeron, Douglas | 28,164 | $37.97 - $38.07 | $1,071,000 |
| May 10, 2007 | Bergeron, Douglas | 47,600 | $37.78 - $37.96 | $1,803,000 |
| May 8, 2007 | Zwarenstein, Barry | 8,200 | $37.14 - $37.58 | $306,000 |
| May 8, 2007 | Zwarenstein, Barry | 9,700 | $37.58 - $37.88 | $366,000 |
| May 8, 2007 | Angel, Isaac | 15,000 | $37.56 - $37.58 | $564,000 |
| May 1, 2007 | Adams, Jesse | 9,334 | $35.50 - $35.81 | $333,000 |
| May 1, 2007 | Adams, Jesse | 11,833 | $35.82 - $35.97 | $425,000 |
| May 1, 2007 | Atkinson, William G. | 3,527 | $35.50 - $35.81 | $126,000 |
| May 1, 2007 | Atkinson, William G. | 4,473 | $35.82 - $35.97 | $161,000 |
| April 11, 2007 | Bergeron, Douglas | 24,000 | $37.50 - $37.8 | $904,000 |
| April 10, 2007 | Atkinson, William G. | 3,215 | $37.48 - $37.87 | $121,000 |
| April 10, 2007 | Zwarenstein, Barry | 12,215 | $37.87 - $38.04 | $464,000 |
| April 10, 2007 | Zwarenstein, Barry | 5,785 | $37.48 - $37.87 | $218,000 |
| April 10, 2007 | Angel, Isaac | 15,000 | $37.85 - $37.87 | $568,000 |
| April 10, 2007 | Atkinson, William G. | 6,785 | $37.87 - $38.04 | $258,000 |
| April 2, 2007 | Atkinson, William G. | 2,449 | $36.36 - $37.76 | $91,000 |
| April 2, 2007 | Atkinson, William G. | 5,551 | $36.18 - $36.35 | $201,000 |
| April 2, 2007 | Adams, Jesse | 2,212 | $36.43 - $36.85 | $81,000 |
| April 2, 2007 | Adams, Jesse | 12,392 | $36.18 - $36.42 | $450,000 |
| March 22, 2007 | Atkinson, William G. | 894 | $37.60 | $33,614 |

CLASS ACTION COMPLAINT

| | | | | |
|---|---|---|---|---|
| March 22, 2007 | Adams, Jesse | 894 | $37.60 | $33,614 |
| March 22, 2007 | Zwarenstein, Barry | 894 | $37.60 | $33,614 |
| March 22, 2007 | Bergeron, Douglas | 3,575 | $37.60 | $134,420 |
| March 15, 2007 | Zwarenstein, Barry | 5,400 | $36 - $36.22 | $195,000 |
| March 15, 2007 | Zwarenstein, Barry | 12,600 | $35.75 - $35.98 | $452,000 |
| March 15, 2007 | Bergeron, Douglas | 19,700 | $36.10 - $36.27 | $713,000 |
| March 15, 2007 | Bergeron, Douglas | 69,613 | $35.92 - $36.10 | $2,507,000 |
| March 15, 2007 | Bergeron, Douglas | 110,687 | $35.83 - $35.92 | $3,971,000 |
| March 13, 2007 | Angel, Isaac | 15,000 | $35.93 - $36.24 | $541,000 |
| March 12, 2007 | Atkinson, William G. | 6,300 | $36.38 - $36.62 | $230,000 |
| March 12, 2007 | Atkinson, William G. | 3,700 | $36.63 - $36.83 | $136,000 |
| March 1, 2007 | Atkinson, William G. | 5,026 | $38.38 - $38.79 | $194,000 |
| March 1, 2007 | Atkinson, William G. | 2,974 | $37.23 - $38.37 | $112,000 |
| March 1, 2007 | Adams, Jesse | 8,391 | $38.38 - $38.79 | $324,000 |
| March 1, 2007 | Adams, Jesse | 4,963 | $37.23 - $38.37 | $188,000 |
| February 8, 2007 | Angel, Isaac | 15,000 | $40.60 - $40.75 | $610,000 |
| February 1, 2007 | Atkinson, William G. | 2,938 | $40.25 - $40.44 | $119,000 |
| February 1, 2007 | Atkinson, William G. | 5,062 | $39.96 - $40.25 | $203,000 |
| February 1, 2007 | Waller, Elmore | 4,509 | $40.24 - $40.44 | $182,000 |
| February 1, 2007 | Waller, Elmore | 5,491 | $39.96 - $40.23 | $220,000 |
| February 1, 2007 | Adams, Jesse | 7,773 | $40.25 - $40.44 | $314,000 |
| February 1, 2007 | Adams, Jesse | 13,393 | $39.96 - $40.25 | $537,000 |
| January 22, 2007 | Atkinson, William G. | 7,329 | $37.90 - $38.08 | $278,000 |
| January 22, 2007 | Atkinson, William G. | 10,671 | $37.47 - $37.86 | $402,000 |
| January 10, 2007 | Bergeron, Douglas | 200,000 | $35.30 - $35.55 | $7,085,000 |
| January 9, 2007 | Zwarenstein, Barry | 4,000 | $35.21 - $35.58 | $142,000 |
| January 3, 2007 | Waller, Elmore | 10,000 | $35.58 - $36.10 | $358,000 |

CLASS ACTION COMPLAINT

| Date | Name | Shares | Price | Value |
|---|---|---|---|---|
| January 3, 2007 | Adams, Jesse | 5,100 | $35.81 - $36.13 | $183,000 |
| January 3, 2007 | Adams, Jesse | 10,424 | $35.11 - $35.80 | $370,000 |
| December 19, 2006 | Timm, Daniel L.; Roche, Collin E.; Bondy, Craig A. | 3,000,000 | $35.78 | $107,340,000 |
| December 19, 2006 | GTCR Invest LP (1) | 25,387 | $35.87 | $910,631 |
| December 19, 2006 | GTCR Capital Partners LP (1) | 201,571 | $35.78 | $7,212,210 |
| December 19, 2006 | GTCR Fund VII LP (1) | 2,773,042 | $35.78 | $99,219,442 |
| December 13, 2006 | Bergeron, Douglas | 3,700 | $37.14 - $37.21 | $138,000 |
| December 13, 2006 | Bergeron, Douglas | 12,500 | $36.81 - $37.12 | $462,000 |
| December 13, 2006 | Bergeron, Douglas | 18,840 | $36.61 - $36.8 | $692,000 |
| December 13, 2006 | Bergeron, Douglas | 37,800 | $36.51 - $36.6 | $1,382,000 |
| December 13, 2006 | Bergeron, Douglas | 27,200 | $36.39 - $36.51 | $991,000 |
| December 12, 2006 | Zwarenstein, Barry | 4,000 | $36.86 - $37.57 | $149,000 |
| December 11, 2006 | Bergeron, Douglas | 12,300 | $36.29 - $36.5 | $448,000 |
| December 11, 2006 | Bergeron, Douglas | 10,600 | $35.97 - $36.28 | $383,000 |
| December 11, 2006 | Bergeron, Douglas | 28,800 | $35.89 - $35.96 | $1,035,000 |
| December 11, 2006 | Bergeron, Douglas | 21,300 | $35.75 - $35.89 | $763,000 |
| December 11, 2006 | Bergeron, Douglas | 26,900 | $35.55 - $35.74 | $959,000 |
| December 4, 2006 | Bergeron, Douglas | 20,900 | $34.33 - $34.57 | $720,000 |
| December 4, 2006 | Bergeron, Douglas | 61,100 | $33.99 - $34.32 | $2,087,000 |
| December 1, 2006 | Atkinson, William G. | 970 | $33.38 - $33.6 | $32,000 |
| December 1, 2006 | Waller, Elmore | 1,942 | $33.38 - $33.60 | $65,000 |
| December 1, 2006 | Waller, Elmore | 8,058 | $33.12 - $33.37 | $268,000 |
| December 1, 2006 | Turnbull, David | 1,552 | $33.38 - $33.6 | $52,000 |
| December 1, 2006 | Turnbull, David | 6,448 | $33.12 - $33.37 | $214,000 |

CLASS ACTION COMPLAINT

| | | | | |
|---|---|---|---|---|
| December 1, 2006 | Atkinson, William G. | 4,030 | $33.12 - $33.37 | $134,000 |
| December 1, 2006 | Adams, Jesse | 960 | $33.38 - $33.6 | $32,000 |
| December 1, 2006 | Adams, Jesse | 3,985 | $33.12 - $33.37 | $132,000 |
| December 1, 2006 | Bergeron, Douglas | 17,500 | $33.40 - $33.63 | $5,870,002 |
| December 1, 2006 | Bergeron, Douglas | 50,500 | $33.26 - $33.4 | $1,683,000 |
| November 30, 2006 | Zwarenstein, Barry | 4,000 | $32.82 - $33.75 | $133,000 |
| November 1, 2006 | Waller, Elmore | 4,810 | $29.79 - $30.17 | $144,000 |
| November 1, 2006 | Waller, Elmore | 5,190 | $29.39 - $29.78 | $154,000 |
| November 1, 2006 | Turnbull, David | 3,849 | $29.79 - $30.17 | $115,000 |
| November 1, 2006 | Turnbull, David | 4,151 | $29.39 - $29.78 | $123,000 |
| November 1, 2006 | Atkinson, William G. | 2,404 | $29.79 - $30.17 | $72,000 |
| November 1, 2006 | Atkinson, William G. | 2,596 | $29.39 - $29.78 | $77,000 |
| November 1, 2006 | Adams, Jesse | 3,833 | $29.79 - $30.17 | $115,000 |
| November 1, 2006 | Adams, Jesse | 4,140 | $29.39 - $29.78 | $122,000 |
| November 1, 2006 | Bergeron, Douglas | 57,400 | $29.95 - $30.3 | $1,729,000 |
| November 1, 2006 | Bergeron, Douglas | 28,900 | $29.66 - $29.94 | $861,000 |
| November 1, 2006 | Bergeron, Douglas | 19,000 | $29.54 - $29.65 | $562,000 |
| November 1, 2006 | Bergeron, Douglas | 19,700 | $29.29 - $29.54 | $579,000 |
| October 31, 2006 | Zwarenstein, Barry | 4,000 | $29 - $29.22 | $116,000 |
| October 2, 2006 | Turnbull, David | 4,611 | $28.02 - $28.52 | $130,000 |
| October 2, 2006 | Turnbull, David | 3,319 | $27.63 - $28.01 | $92,000 |
| October 2, 2006 | Atkinson, William G. | 2,881 | $28.02 - $28.52 | $81,000 |
| October 2, 2006 | Atkinson, William G. | 2,119 | $27.63 - $28.01 | $59,000 |
| October 2, 2006 | Adams, Jesse | 4,593 | $28.02 - $28.52 | $130,000 |
| October 2, 2006 | Adams, Jesse | 3,380 | $27.63 - $28.01 | $94,000 |
| October 2, 2006 | Bergeron, Douglas | 11,100 | $28.17 - $28.45 | $314,000 |
| October 2, 2006 | Bergeron, Douglas | 17,200 | $28.05 - $28.16 | $483,000 |

CLASS ACTION COMPLAINT

| September 29, 2006 | Zwarenstein, Barry | 4,000 | $28.55 - $29 | $115,000 |
| September 5, 2006 | Bergeron, Douglas | 114,400 | $27.97 - $28.13 | $3,209,000 |
| September 5, 2006 | Bergeron, Douglas | 5,400 | $28.14 - $28.76 | $154,000 |
| September 1, 2006 | Adams, Jesse | 8,000 | $27.25 - $28.11 | $221,000 |
| September 1, 2006 | Atkinson, William G. | 5,000 | $27.25 - $28.11 | $138,000 |
| September 1, 2006 | Turnbull, David | 8,000 | $27.25 - $28.11 | $221,000 |
| | **TOTAL:** | **22,513,752 Shares** | | **$833,069,417 Gross Proceeds** |

### Applicability of Presumption of Reliance: Fraud On The Market Doctrine

54.     At all relevant times, the market for VeriFone's securities was an efficient market for the following reasons, among others:

(a)     VeriFone's securities met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, VeriFone filed periodic public reports with the SEC and the NYSE;

(c)     VeriFone regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     VeriFone was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

55.     As a result of the foregoing, the market for VeriFone's securities promptly digested current information regarding VeriFone from all publicly-available sources and reflected such

1  information in the price of VeriFone's securities.  Under these circumstances, all purchasers of

2  VeriFone's securities during the Class Period suffered similar injury through their purchase of

3  VeriFone's securities at artificially inflated prices and a presumption of reliance applies.

4  **NO SAFE HARBOR**

5      56.    The statutory safe harbor provided for forward-looking statements under certain

6  circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

7  Many of the specific statements pleaded herein were not identified as "forward-looking statements"

8  when made.  To the extent there were any forward-looking statements, there were no meaningful

9  cautionary statements identifying important factors that could cause actual results to differ materially

10 from those in the purportedly forward-looking statements.  Alternatively, to the extent that the

11 statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are

12 liable for those false forward-looking statements because at the time each of those forward-looking

13 statements was made, the particular speaker knew that the particular forward-looking statement was

14 false, and/or the forward-looking statement was authorized and/or approved by an executive officer

15 of VeriFone who knew that those statements were false when made.

16 **FIRST CLAIM**<br>**Violation of Section 10(b) of**<br>**The Exchange Act and Rule 10b-5**<br>**Promulgated Thereunder Against All Defendants**

17

18

19     57.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

20 forth herein.

21     58.    During the Class Period, defendants carried out a plan, scheme and course of conduct

22 which was intended to and, throughout the Class Period, did: (i) deceive the investing public,

23 including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other

24 members of the Class to purchase VeriFone's securities at artificially inflated prices.  In furtherance

25 of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions

26 set forth herein.

27     59.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue

28 statements of material fact and/or omitted to state material facts necessary to make the statements not

1    misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud

2    and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high

3    market prices for VeriFone's securities in violation of Section 10(b) of the Exchange Act and Rule

4    10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct

5    charged herein or as controlling persons as alleged below.

6         60.    Defendants, individually and in concert, directly and indirectly, by the use, means or

7    instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

8    continuous course of conduct to conceal adverse material information about VeriFone's financial

9    well-being, business relationships, and prospects, as specified herein.

10        61.    These defendants employed devices, schemes and artifices to defraud, while in

11   possession of material adverse non-public information and engaged in acts, practices, and a course of

12   conduct as alleged herein in an effort to assure investors of VeriFone's value and performance and

13   continued substantial growth, which included the making of, or the participation in the making of,

14   untrue statements of material facts and omitting to state material facts necessary in order to make the

15   statements made about VeriFone and its business operations and future prospects in light of the

16   circumstances under which they were made, not misleading, as set forth more particularly herein,

17   and engaged in transactions, practices and a course of business which operated as a fraud and deceit

18   upon the purchasers of VeriFone's securities during the Class Period.

19        62.    Each of the Individual Defendants' primary liability, and controlling person liability,

20   arises from the following facts: (i) the Individual Defendants were high-level executives and/or

21   directors at the Company during the Class Period and members of the Company's management team

22   or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities

23   as a senior officer and/or director of the Company, was privy to and participated in the creation,

24   development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii)

25   each of these defendants enjoyed significant personal contact and familiarity with the other

26   defendants and was advised of, and had access to, other members of the Company's management

27   team, internal reports and other data and information about the Company's finances, operations, and

28   sales at all relevant times; and (iv) each of these defendants was aware of the Company's

1    dissemination of information to the investing public which they knew or recklessly disregarded was

2    materially false and misleading.

3        63.    The defendants had actual knowledge of the misrepresentations and omissions of

4    material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

5    ascertain and to disclose such facts, even though such facts were available to them. Such defendants'

6    material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose

7    and effect of concealing VeriFone's financial well-being, business relationships, and prospects from

8    the investing public and supporting the artificially inflated price of its securities. As demonstrated

9    by defendants' overstatements and misstatements of the Company's financial well-being, business

10   relationships, and prospects throughout the Class Period, defendants, if they did not have actual

11   knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such

12   knowledge by deliberately refraining from taking those steps necessary to discover whether those

13   statements were false or misleading.

14       64.    As a result of the dissemination of the materially false and misleading information

15   and failure to disclose material facts, as set forth above, the market price of VeriFone's securities was

16   artificially inflated during the Class Period. In ignorance of the fact that market prices of VeriFone's

17   securities were artificially inflated, and relying directly or indirectly on the false and misleading

18   statements made by defendants, or upon the integrity of the market in which the securities trades,

19   and/or in the absence of material adverse information that was known to or recklessly disregarded by

20   defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff

21   and the other members of the Class acquired VeriFone's securities during the Class Period at

22   artificially high prices and were damaged thereby.

23       65.    At the time of said misrepresentations and omissions, Plaintiff and other members of

24   the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other

25   members of the Class and the marketplace known the truth regarding the problems that VeriFone

26   was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class

27   would not have purchased or otherwise acquired their VeriFone securities, or, if they had acquired

28   such securities during the Class Period, they would not have done so at the artificially inflated prices

CLASS ACTION COMPLAINT

1   which they paid.

2       66.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange

3   Act and Rule 10b-5 promulgated thereunder.

4       67.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the

5   other members of the Class suffered damages in connection with their respective purchases and sales

6   of the Company's securities during the Class Period.

7   **SECOND CLAIM**<br>**Violation of Section 20(a) of**

8   **The Exchange Act Against the Individual Defendants**

9       68.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

10  forth herein.

11      69.    The Individual Defendants acted as controlling persons of VeriFone within the

12  meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level

13  positions, and their ownership and contractual rights, participation in and/or awareness of the

14  Company's operations and/or intimate knowledge of the false financial statements filed by the

15  Company with the SEC and disseminated to the investing public, the Individual Defendants had the

16  power to influence and control and did influence and control, directly or indirectly, the decision-

17  making of the Company, including the content and dissemination of the various statements which

18  Plaintiff contends are false and misleading. The Individual Defendants were provided with or had

19  unlimited access to copies of the Company's reports, press releases, public filings and other

20  statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were

21  issued and had the ability to prevent the issuance of the statements or cause the statements to be

22  corrected.

23      70.    In particular, each of these defendants had direct and supervisory involvement in the

24  day-to-day operations of the Company and, therefore, is presumed to have had the power to control

25  or influence the particular transactions giving rise to the securities violations as alleged herein, and

26  exercised the same.

27      71.    As set forth above, VeriFone and the Individual Defendants each violated Section

28  10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their

1   positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the

2   Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other

3   members of the Class suffered damages in connection with their purchases of the Company's

4   securities during the Class Period.

5          **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

6              (a)    Determining that this action is a proper class action under Rule 23 of the

7                    Federal Rules of Civil Procedure;

8              (b)    Awarding compensatory damages in favor of Plaintiff and the other Class

9                    members against all defendants, jointly and severally, for all damages

10                   sustained as a result of defendants' wrongdoing, in an amount to be proven at

11                   trial, including interest thereon;

12             (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred

13                   in this action, including counsel fees and expert fees; and

14             (d)    Such other and further relief as the Court may deem just and proper.

15                        **JURY TRIAL DEMANDED**

16         Plaintiff hereby demands a trial by jury.

17

18  Dated: December 10, 2007          SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP

19

20                        _____ For Alan R. Plutzik

                      Alan R. Plutzik, Of Counsel (Bar No. 077758)

21                        L. Timothy Fisher, Of Counsel (Bar No. 191626)

                      2125 Oak Grove Road, Suite 120

22                        Walnut Creek, CA 94598

                      Telephone: (925) 945-0770

23                        Facsimile: (925) 945-8792

24                           - and -

25                        Richard A. Maniskas

26                        D. Seamus Kaskela

                      280 King of Prussia Road

27                        Radnor, PA 19087

                      Telephone: (610) 667-7706

28                        Facsimile: (610) 667-7056

CLASS ACTION COMPLAINT

## CERTIFICATION

I, Donald Cerini, ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the Complaint, and authorizes its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's purchase and sale transaction(s) in the VeriFone Holdings, Inc. (NYSE: PAY) security that is the subject of this action during the Class Period is/are as follows:

| Type of Security (common stock, preferred, option, or bond) | Number of Shares | Bought (B) | Sold (S) | Date | Price per share |
|---|---|---|---|---|---|
| Common stock | 125 | (B) | | 01/29/07 | $39.91 |
| Common stock | 125 | | (S) | 02/27/07 | $37.92 |
| | | | | | |
| | | | | | |
| | | | | | |

(Please list additional purchase and sale information on a separate sheet of paper, if necessary)

5.    Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.    During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as described below:_____.

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _8_ day of _December_, 2007

**DONALD CERINI**